**TRENK ISABEL SIDDIQI**
 **& SHAHDANIAN P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@trenkisabel.law
Email: rroglieri@trenkisabel.law

*Counsel to Technical Arts Group LLC,*
*Chapter 11 Debtor and Debtor-in-Possession*

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>TECHNICAL ARTS GROUP LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-22241 (VFP)<br><br>Hearing Date: April 9, 2026 |

### REPLY IN FURTHER SUPPORT OF USE OF CASH COLLATERAL

Technical Arts Group LLC, Chapter 11 debtor and debtor-in-possession (the "TAG"), by and through its counsel, Trenk Isabel Siddiqi & Shahdanian P.C., hereby responds to the supplemental objection by Abe V. Systems, Inc. ("AVS") [ECF 155] and respectfully states as follows:

1.     On November 18, 2025, TAG filed its voluntary Chapter 11 proceedings pursuant to 11 U.S.D. § 301 *et seq.*

2.     TAG is a debtor and debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3.     No official committee of unsecured creditors has been formed in this matter.

4.     Updated 13-week projections are annexed hereto as Exhibit **"A"**.

5. The sole application for appointment of Chapter 11 Trustee by Robert Toma ("Toma") was denied without prejudice. ECF 150.

6. At AVS's request, an expedited trial concerning the November 19, 2024 purported auction began on March 9, 11, 12, and 13, 2026 – 4 days.

7. A mediation session is scheduled for April 16, 2026, as Ordered by the Court, with the Honorable Michael B. Kaplan, U.S.B.J. in Trenton.

8. Previously, as an interim step, without prejudice to all parties rights, remedies and defenses and without any allocation as to how the monies would be treated, $25,000 was paid in November as adequate protection, $33,000 in December, $33,000 in January, and $34,000 in February 2026.

9. As the Court is aware, at the time of the auction, the remaining debt due was approximately $1,376,321.83.

10. The unequivocal and undisputed evidence demonstrates the background, nature and process that AVS, its auctioneers and Paul Hastings LLP, as its counsel, who quarterbacked the process, undertook was fatally flawed in all aspects.

11. AVS seeks recovery of legal fees incurred at a rate approaching $350,000 per month. See ECF 155, Supplement Obj. at ¶ 14. Courts in this Circuit routinely scrutinize such requests and reduce or deny fees where they reflect excessive, duplicative, or inefficient billing. In In re W. Chestnut Realty Inc., the Court reduced fees for massive excesses, including duplicative work and overstaffing. 186 B.R. 612, 621 (Bankr. E.D. Pa. 1995). In In re Green Valley Beer, the Court emphasized that creditors are not entitled to fees arising from overzealous or unnecessary advocacy. 281 B.R. 253, 258 (Bankr. W.D. Pa. 2002). The scale and pace of

2

AVS's fee accumulation strongly suggest litigation-driven spending rather than efforts necessary to protect collateral.

12.    § 506(b) permits recovery of fees incurred in enforcing or preserving collateral, not for litigation strategy or disputes arising from the creditor's own conduct. See 11 U.S.C. § 506(b). Courts in this Circuit distinguish between recoverable collection efforts and non-recoverable litigation-related fees. Here, AVS's fees arise largely from conducting and defending an Article 9 auction whose validity is actively disputed. These are not routine enforcement costs contemplated by a lending agreement, but instead stem from AVS's own affirmative conduct. Where a creditor's entitlement depends on the validity of its own actions, courts seem to be reluctant to permit recovery of fees incurred in pursuing or defending those actions.

13.    Courts further require that fees bear a rational relationship to the secured claim and reflect appropriate billing judgment. Creditors may not treat collateral as a "blank check" to fund litigation. In re Precision Tool & Die Mfg. Co., 285 B.R. 621, 624 (Bankr. W.D. Pa. 2002). In other words, the creditor cannot pursue unnecessary litigation in an abundance of caution and expect to be paid for its services from the bankruptcy estate. Id. AVS's position effectively seeks to shift the cost of its litigation strategy, including defending a disputed auction, onto the estate, which § 506(b) does not seem to permit.

14.    With regard to the Auction, it is undisputed that there was no access, no accurate inventory, no process to get the items out of the Moonachie warehouse or wherever they may be located, and that numerous potential bidders articulated these very real issues and much more. Despite that knowledge, an affirmative decision was made by AVS and its professionals to ignore the numerous flaws and to refuse to seek relief before the Superior Court of New Jersey.

4937-6734-6810, v. 1

15. As AVS concedes, December, January and February are the weakest months of the year. Therefore, beginning in March and continuing through the summer, TAG is meeting its obligations as they become due.

16. AVS complains and states that each of the uses lessens the value of the equipment. First and foremost, TAG has a full-time maintenance staff that takes care of the machinery and equipment to make sure it is in optimal condition. Further, as is clear from the past there were normal sales and purchases of equipment. Because of the Chapter 11, TAG has honored the previous request and court order and is not currently selling and buying new equipment except as may be necessary and critical for component purposes.

17. Thus, to the extent that TAG is not purchasing new equipment, it is collecting receivables which are generated.

18. Under the analysis previously submitted by Mr. Viera dated January 6, 2026, AVS is fully protected. specifically, Mr. Viera estimates that the rental value of the equipment would generate "at least $500,000/Mo." [ECF 92 at ¶8] His comparables are $1,293,217/Mo. and $1,545,420/Mo. See ECF 92 at ¶¶ 6, 7.

19. AVS has asserted that its debt has gone from $1.3 million to $3.3 million or more as a result of its efforts with regard to the auction. Plain and simple, those expenses were not consistent with Article 9 and not to protect its secured claim. As such, if TAG prevails in the pending litigation, those expenses will not be charged to the estate.

20. With regard to the Monthly Operating Reports, they have been filed on the Docket as ECF 159, 160 and 161.

21. AVS submits an incomprehensible e-mail from Marcel Fairbairn. As the Court will recall, Mr. Fairbairn testified on March 13, 2026. During his testimony, Mr. Fairbairn

4

admitted that he "made up" his valuation under "depreciated accounts value". He further conceded that he did not follow any standard norms of analysis in attempting to value Debtor's equipment. He never attempted nor made any inspection. Thus, whatever Mr. Fairbairn is attempting to do in his April 2, 2026 two-page e-mail is far from prohibitive. The only understandable calculation is at the end of the e-mail where he indicates that the "mix in the subject inventory" is valued at $19,395,404[1] with the letters "MSRP".

22. AVS's complaints about the event notification/schedule are erroneous. The Court Order provides for contracts in place. That is exactly what has been provided. On April 6, 2026, TAG supplemented the information provided and TAG's counsel spoke telephonically with Chris Mazza, Esq. See Exhibit **"B"**.

23. Based upon the foregoing, TAG's payment of adequate protection should be calculated at $17,991.20. This is the amortization of the secured claim as of November 19, 2024 ($1,376,321.83) plus interest at 14.87% (contract (4.87%) plus default interest (10%)).

Dated: April $\underline{8}$, 2026

**TRENK ISABEL SIDDIQI & SHAHDANIAN P.C.**

By:___ */s/ Richard D. Trenk*_____
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@trenkisabel.law
Email: rroglieri@trenkisabel.law

*Counsel to Technical Arts Group LLC,*
*Chapter 11 Debtor and Debtor-in-Possession*

---

[1] This is the total of the categories. Mr. Fairbairn again proves the entire fallacy of the Sham Auction - different markets and buyers exist for different categories of gear (i.e., audio, lighting, rigging/staging, power and cable, and video).

4937-6734-6810, v. 1